United States Court of Appeals
Fifth Circuit

**FILED**
March 23, 2004

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Charles R. Fulbruge III
Clerk

No. 03-40905

D.C. Docket No. 1:02-CV-217

VICTOR HUGO SALDANO

    Petitioner - Appellee

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

    Respondent - Appellee



v.

JOHN R ROACH, District Attorney of Collin County, Texas;

    Movant Plaintiff - Appellant

Appeal from the United States District Court for the
Eastern District of Texas, Beaumont.

Before KING, Chief Judge, and SMITH and DENNIS, Circuit Judges.

JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed in part and dismissed in part.

ISSUED AS MANDATE:  APR 21 2004

A true copy
Test
Clerk, U. S. Court of Appeals, Fifth Circuit
By _____
Deputy
New Orleans, Louisiana     APR 21 2004

Case 1:02-cv-00217-RAS   Document 23   Filed 04/26/04   Page 2 of 19 PageID #: 166

United States Court of Appeals
Fifth Circuit
**FILED**
March 23, 2004
Charles R. Fulbruge III
Clerk

REVISED APRIL 8, 2004
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-40905

VICTOR HUGO SALDANO

    Petitioner - Appellee

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

    Respondent - Appellee

v.

JOHN R ROACH, District Attorney of Collin County, Texas

    Movant Plaintiff - Appellant

Appeal from the United States District Court
for the Eastern District of Texas

Before KING, Chief Judge, and SMITH and DENNIS, Circuit Judges.

KING, Chief Judge:

    Victor Hugo Saldano was convicted of a capital offense and sentenced to death. Saldano subsequently filed a petition for writ of habeas corpus in federal court challenging his sentence. John R. Roach, the District Attorney of Collin County, Texas, appeals the district court's denial of his application to intervene as of right in Saldano's habeas corpus suit. For the following reasons, we affirm in part and dismiss in part.

    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

1

In 1996, a Texas jury convicted Saldano of capital murder. During the punishment phase of Saldano's trial, the Collin County District Attorney ("District Attorney") called Dr. Walter Quijano, a psychologist, to testify as an expert witness. Dr. Quijano provided the jury with a list of twenty-four unweighted factors that he advised the jury to use in evaluating Saldano's future dangerousness. One of the factors was race. As to this factor, Dr. Quijano stated that Saldano was Hispanic, pointed out that Hispanics were over-represented in the Texas prison system, and opined that there was a correlation between race and ethnicity and future dangerousness. During closing arguments, the District Attorney reminded the jury to consider the twenty-four factors laid out by Dr. Quijano when assessing Saldano's future dangerousness. Saldano did not object either to Dr. Quijano's testimony or to the District Attorney's reference to it during his closing argument; instead, he met Dr. Quijano's testimony through cross-examination and the presentation of a rebuttal witness.

After hearing all the evidence, the jury found that there was a probability that Saldano would commit criminal acts of violence that would constitute a continuing threat to society. In addition, the jury found insufficient mitigating circumstances to warrant life imprisonment rather than the death penalty. Consequently, the trial judge sentenced Saldano to death.

Saldano appealed directly to the Texas Court of Criminal Appeals, claiming that he had been denied due process of law because his race and ethnicity were improperly used to support a finding of future dangerousness during the punishment phase of his trial. The District Attorney argued that, because Saldano did not object to Dr. Quijano's testimony, Saldano's claim was procedurally barred by Texas's contemporaneous objection rule. The Court of Criminal Appeals affirmed Saldano's conviction and sentence, after finding that Saldano's claim was, indeed, procedurally barred.

The United States Supreme Court granted certiorari. Before the Supreme Court, the Attorney General of the State of Texas assumed representation of the State.[1] The Attorney General confessed error in Saldano's sentencing and declined to raise Saldano's procedural default as a defense. The Supreme Court vacated the judgment against Saldano and "remanded to the Court of Criminal Appeals of Texas for further consideration in light of the confession of error." Saldano v. Texas, 530 U.S. 1212, 1212 (2000).[2]

---

[1] The District Attorney sought leave to file a brief with the Supreme Court defending the judgment of the Court of Criminal Appeals, but the Supreme Court denied this request.

[2] Following the Supreme Court's ruling in Saldano, four other state inmates, each of whom had been sentenced to death as a result of punishment-phase hearings in which Dr. Quijano gave substantially similar testimony, petitioned for federal writs of habeas corpus. The Attorney General confessed error in each case

3

On remand, the State Prosecuting Attorney,[3] with the District Attorney's help, represented the State before the Court of Criminal Appeals. The Attorney General submitted a brief as amicus curiae. Once again, the Court of Criminal Appeals ruled that Saldano's claim was procedurally barred. Saldano v. State, 70 S.W.3d 873, 891 (Tex. Crim. App. 2002) (en banc).

Saldano subsequently petitioned the United States District Court for the Eastern District of Texas for a writ of habeas corpus. The Attorney General--representing Doug Dretke, in his official capacity as Director of the Texas Department of Criminal Justice, Institutional Division--confessed error and waived Saldano's procedural default. The District Attorney filed an application to intervene as of right to oppose Saldano's petition on procedural-default and harmless-error grounds. The district court held that the political-question doctrine prevented it from

---

and, in each, the federal court vacated the death sentence and granted a new sentencing hearing. See Alba v. Johnson, No. 00-40194 (5th Cir. Aug. 21, 2000) (unpublished opinion); Broxton v. Johnson, No. H-00-CV-1034 (S.D. Tex. Mar. 28, 2001) (unpublished opinion); Blue v. Johnson, No. H-99-0350 (S.D. Tex. Oct. 2, 2000) (unpublished opinion); Garcia v. Johnson, No. 99-CV-00134 (E.D. Tex. Sept. 7, 2000) (unpublished opinion).

[3] The State Prosecuting Attorney has primary authority for representing the State before the Texas Court of Criminal Appeals, but a district attorney may assist the State Prosecuting Attorney. Saldano v. State, 70 S.W.3d 873, 876-77 (Tex. Crim. App. 2002) (en banc) (citing TEX. GOV'T CODE ANN. § 42.001(a) for the authority of the State Prosecuting Attorney); TEX. GOV'T CODE ANN. § 42.005(b). Article 2.01 of the TEXAS CODE OF CRIMINAL PROCEDURE outlines the scope of authority of a district attorney.

considering the merits of the District Attorney's application for intervention.[4]

The District Attorney appealed. In Saldano v. O'Connell, 322 F.3d 365, 371 (5th Cir. 2003), we held that the district court erred in finding that the District Attorney's application for intervention presented it with a non-justiciable political question. Therefore, we reversed the district court's order and remanded the District Attorney's application to the district court for disposition on the merits. Id.

On remand, the district court denied the District Attorney's application for intervention and granted Saldano's petition for a writ of habeas corpus. Saldano v. Cockrell, 267 F. Supp. 2d 635 (E.D. Tex. 2003). The District Attorney appeals both the order denying his application for intervention and the judgment granting Saldano's petition for a writ of habeas corpus. Director Dretke did not appeal the district court's judgment, but he did file a brief in opposition to the District Attorney's appeal.

## II.   INTERVENTION

### A.   Standard of Review

This court reviews de novo a district court's decision to deny an application for intervention under Rule 24(a)(2) of the

---

[4] The district court did, however, allow the District Attorney to file a brief as an amicus curiae.

5

Federal Rules of Civil Procedure. <u>Sierra Club v. Espy</u>, 18 F.3d 1202, 1205 (5th Cir. 1994); <u>cf.</u> 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 24.24[2][b], at 24-94 to 24-95 (3d ed. 2003) (describing circuit split).[5]

## B.  Intervention as of Right

Intervention as of right under Rule 24(a)(2) is proper when:

> (1) the motion to intervene is timely; (2) the potential intervener asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene; (3) the disposition of that case may impair or impede the potential intervener's ability to protect her interest; and (4) the existing parties do not adequately represent the potential intervener's interest.

<u>Doe v. Glickman</u>, 256 F.3d 371, 375 (5th Cir. 2001). The District Attorney claims that he meets all four of Rule 24(a)(2)'s requirements. The district court, however, ruled that the District Attorney did not meet the second requirement for intervention because he had failed to "establish that his direct, substantial, legally protectable interests [would] be impaired or impeded by the disposition of th[e] case in his absence as a party." <u>Saldano</u>, 267 F. Supp. 2d at 641. We agree.

To meet the second requirement for Rule 24(a)(2) intervention, a potential intervenor must demonstrate that he has

---

[5]  A different standard of review applies to the district court's decision regarding the timeliness of the potential intervenor's application, <u>see</u> <u>Espy</u>, 18 F.3d at 1205 n.2, but timeliness is not at issue here, since all parties agree that the District Attorney's application was timely.

6

an interest that is related to the property or transaction that forms the basis of the controversy. Doe, 256 F.3d at 375. Not any interest, however, is sufficient; the interest must be "direct, substantial, [and] legally protectable." Id. at 379 (alteration in original) (internal quotation marks omitted). We have explained that "the interest [must] be one which the <u>substantive</u> law recognizes as belonging to or being owned by the applicant." New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 464 (5th Cir. 1984) (en banc). In addition, the intervenor should be the real party in interest regarding his claim. Id.

In this suit against Director Dretke, the real party in interest is the State of Texas. See Diamond v. Charles, 476 U.S. 54, 57 n.2 (1986) ("A suit against a state officer in his official capacity is, of course, a suit against the State."). And, although the District Attorney claims to have the authority to act as the State's representative in this case, state law provides otherwise. Under Texas law, a district attorney's duties and responsibilities are defined by statute. State v. Allen, 32 Tex. 273, 275 (1869). Texas law does not grant district attorneys the authority to represent either state officials, such as Director Dretke, or the State in a federal habeas corpus proceeding. See TEX. CODE CRIM. PROC. ANN. art. 2.01 (Vernon Supp. 2004) (outlining the duties of district

attorneys).[6] Instead, as the District Attorney concedes, Texas law gives the Attorney General the authority to represent Director Dretke and the State in suits such as this. See <u>Sierra Club v. City of San Antonio</u>, 115 F.3d 311, 314 (5th Cir. 1997) ("Under Texas law, the Attorney General enjoys an exclusive right to represent state agencies; other attorneys who may be permitted to assist the Attorney General are subordinate to his authority."); <u>League of United Latin Am. Citizens, Council No. 4434 v. Clements</u>, 999 F.2d 831, 844 (5th Cir. 1993) (en banc) ("The Attorney General may represent state officials in their official capacities . . . .").

Furthermore, since the Attorney General is properly representing the State in this case, Texas law does not permit the District Attorney to assume representation of the State as well. Under Texas law, "either the Attorney General or a county or district attorney may represent the State in a particular

---

[6] Art. 2.01 of the TEXAS CODE OF CRIMINAL PROCEDURE provides: Each district attorney shall represent the State in all criminal cases in the district courts of his district and in appeals therefrom, except in cases where he has been, before his election, employed adversely. When any criminal proceeding is had before an examining court in his district or before a judge upon habeas corpus, and he is notified of the same, and is at the time within his district, he shall represent the State therein, unless prevented by other official duties. It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done. They shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused.

8

situation, but these are the only choices, whichever official represents the State exercises exclusive authority and if services of other lawyers are utilized, they must be 'in subordination' to his authority." Hill v. Tex. Water Quality Bd., 568 S.W.2d 738, 741 (Tex. Civ. App.--Austin 1978, writ ref'd n.r.e.); cf. Saldano, 70 S.W.3d at 883 ("[T]he State has only one interest in a criminal case, and the State can be represented by only one attorney in making such decisions as whether to seek review and whether to confess error."). As the Texas Court of Criminal Appeals aptly noted in a state habeas appeal: "In every appeal, such decisions must be made as whether to appeal, . . . what points to raise[,] whether to confess error, . . . whether to seek further review and on what grounds. Some one person must make these decisions; there cannot be conflicting decisions." Ex Parte Taylor, 36 S.W.3d 883, 887 (Tex. Crim. App. 2001) (en banc) (per curiam). In sum, Texas law does not grant the District Attorney the authority to represent the State here. Thus, the District Attorney's interest in this case is not "one which the substantive law recognizes as belonging to or being owned by the applicant." New Orleans Pub. Serv., Inc., 732 F.2d at 464.

Nevertheless, the District Attorney argues that his intervention is proper in light of Baker v. Wade, 769 F.2d 289 (5th Cir. 1985) (en banc), overruled on other grounds by Lawrence v. Texas, 123 S. Ct. 2472 (2003). In Baker, a federal district

court ruled that Texas's sodomy statute was unconstitutional and enjoined a class of Texas officials from enforcing the statute. Id. at 291. A district attorney, who was an unnamed member of the defendant class, sought to appeal the district court's judgment, since the Attorney General had declined to do so. Id. The district attorney filed a motion to intervene and to be named a class representative, and a Fifth Circuit judge granted the motion. Id. The en banc court ruled that the district attorney had a sufficient interest in the suit for purposes of intervention because he had been specifically enjoined by the district court from enforcing Texas's sodomy statute and, thus, his power to enforce the State's criminal laws had been impaired. Id. at 291-92.

The District Attorney's reliance on Baker is misplaced. Unlike the district attorney in Baker, who was an unnamed member of the defendant class, the District Attorney is not a party to this case. Therefore, the District Attorney is not legally bound by the district court's decision to grant habeas relief in the same way in which the district attorney in Baker was bound.[7]

---

[7] Because, however, the District Attorney must still "represent the State in all criminal cases in the district courts of his district and in appeals therefrom," TEX. CODE CRIM. PROC. ANN. art. 2.01, he is "bound" to make a decision on how to proceed in the light of intervening decisions. Naturally, in exercising that authority and carrying out that responsibility, he is obligated, as an attorney and officer of the court, to heed governing caselaw.

10

Furthermore, in <u>Baker</u>, the injunction clearly impaired the district attorney's ability to carry out his official duties under state law because it prevented him from enforcing one of Texas's criminal laws. Here, by contrast, the District Attorney has not been prevented from performing his duties under Texas law because he may still seek the death penalty in this and other cases.[8] Thus, the District Attorney has not demonstrated that his interest in this case is "substantial" and "legally cognizable" like the district attorney's interest in <u>Baker</u>. Consequently, while intervention was proper in <u>Baker</u>, it is not proper under the facts of this case.[9]

It is true that the District Attorney will be affected, as a practical matter, by the district court's order. The District Attorney certainly worked hard to obtain a conviction and to defend the conviction and sentence on appeal. Understandably, the District Attorney does not wish to undergo the costs and burdens of conducting a new sentencing hearing. If this were a

---

[8] Although the District Attorney may no longer elicit testimony regarding the correlation between race and future dangerousness, the district court's order has not impaired his job function because, under Texas law, district attorneys are not permitted to present such testimony in any case. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(2) (Vernon Supp. 2004) ("[E]vidence may not be offered by the state to establish that the race or ethnicity of the defendant makes it likely that the defendant will engage in future criminal conduct.").

[9] We also note that we have never applied <u>Baker</u> in the context of habeas corpus, and we see no reason to do so here.

11

sufficient interest to justify intervention, however, a state district attorney would be able to intervene in almost any habeas corpus suit where he did not agree with the Attorney General's method of representing the State. This outcome would be contrary to state law, which has chosen the Attorney General, rather than the various district attorneys, to represent the State in federal habeas corpus suits.

Furthermore, even if the District Attorney's interest in this suit were sufficient to permit his intervention, we would nevertheless conclude that Rule 24 intervention is improper because the District Attorney has not demonstrated that he meets the fourth requirement for intervention: that his interest is inadequately represented by the existing parties. Doe, 256 F.3d at 375. To meet this requirement, a potential intervenor must show that the representation of his interest by existing parties to the suit "'may be'" inadequate. Edwards v. City of Houston, 78 F.3d 983, 1005 (5th Cir. 1996) (en banc) (quoting Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972)).

The District Attorney contends that the Attorney General is not representing his interest in this case because the Attorney General is not adequately representing the State's interest. According to the District Attorney, the Attorney General's representation of the State's interest is inadequate because the Attorney General "aligned himself with Saldano and joined Saldano

12

in urging the district court to vacate Saldano's sentence" and because the Attorney General did not appeal the district court's order granting habeas relief to Saldano.

As the District Attorney has conceded, however, the Attorney General has discretion to confess error and to waive procedural default. See, e.g., Alba v. Johnson, No. 00-40194 (5th Cir. Aug. 21, 2000) (unpublished opinion) (accepting the Texas Attorney General's confession of error);[10] Brown v. State, 95 Tex. Crim. 664, 664, 255 S.W. 750, 751 (1923) (accepting the Attorney General's confession of error); cf. McGee v. Estelle, 722 F.2d 1206, 1212 (5th Cir. 1984) ("As the chief legal officer of the state, the attorney general is the appropriate person to assert, or to waive" habeas exhaustion requirements.). The Attorney General is not an inadequate representative simply because he has taken these actions, especially when state law gives him the authority to do so.

It is true that, in exercising his discretion to confess error and to waive procedural default, "the Attorney General cannot bind state officials, his clients, to his own policy preferences." Clements, 999 F.2d at 840. There is no indication, however, that the Attorney General is acting contrary to the will of the State or his client, Director Dretke. Indeed,

---

[10] Alba involved almost identical facts—indeed, even the same expert witness—as this case.

13

there is evidence that the Attorney General's confession of error and waiver of procedural default furthers the State's goal of ensuring that capital sentencing is untainted by racial prejudice, as manifested by recently enacted state legislation. See TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(2) (Vernon Supp. 2004) ("[E]vidence may not be offered by the state to establish that the race or ethnicity of the defendant makes it likely that the defendant will engage in future criminal conduct.").

Moreover, the Attorney General's failure to appeal does not make him an inadequate representative of the State's interest. In Baker, we stated that,

> In this case where the district court has rejected binding Supreme Court authority, the circuit court is entitled to conclude as a matter of law that those interests were inadequately represented by those who failed to pursue the appeal and that the state officer seeking to intervene was a proper party to do so.

769 F.2d at 292. According to the District Attorney, Baker stands for the proposition that a party's failure to appeal an adverse judgment renders the party an inadequate representative of the potential intervenor's interest. Crucial to our holding in Baker, however, was not simply that the Attorney General chose not to appeal, but that the Attorney General failed to appeal where, as the en banc court saw it, "binding Supreme Court authority" indicated that the statute was not, in fact, unconstitutional. Id. While we need not decide whether the Attorney General's confession of error was correct--indeed, as we

14

explain below, we do not have jurisdiction to decide this question--we can conclude that the district court, by accepting the Attorney General's confession of error, did not ignore binding Supreme Court authority. Cf. McCleskey v. Kemp, 481 U.S. 279, 309 n.30 (1987) ("The Constitution prohibits racially biased prosecutorial arguments."); Baldwin v. Alabama, 472 U.S. 372, 382 (1985) ("[A] death sentence based upon consideration of 'factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as for example the race . . . of the defendant,' would violate the Constitution." (dictum) (quoting Zant v. Stephens, 462 U.S. 862, 885 (1983))). Similarly, without deciding whether the district court was correct in accepting the State's waiver of procedural default and waiver of harmless error, we hold that the district court did not ignore Supreme Court authority in so doing.[11] Cf. Trest v. Cain, 522 U.S. 87, 89 (1997) ("[P]rocedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserv[e]' if it is not to

---

[11] As the District Attorney points out, Coleman v. Thompson held that federal habeas review is barred--absent a showing of cause and prejudice, or a fundamental miscarriage of justice--when a state prisoner has defaulted his federal claim pursuant to an adequate and independent state bar, such as Texas's contemporaneous objection rule. 501 U.S. 722, 750 (1991). The district court did not violate the rule announced in Coleman, however, when it granted habeas relief to Saldano. Coleman does not prevent a State from waiving a procedural bar in the first place. See Trest v. Cain, 522 U.S. 87, 89 (1997) (holding that procedural default is a defense that the State must raise).

15

'lose the right to assert the defense thereafter.'" (second alteration in original) (quoting Gray v. Netherland, 518 U.S. 152, 166 (1996))); 2 RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE & PROCEDURE § 31.2a (4th ed. 2001) ("[T]he 'harmless error' obstacle does not arise unless the state asserts it; the state's failure to do so in a timely and unequivocal fashion waives the defense."). Consequently, there is no reason to conclude that the Attorney General's decision not to appeal makes him an inadequate representative of the State's interest.

Finally, the District Attorney contends that the Attorney General inadequately represents his interest because the Attorney General's position in this case is directly contrary to the position taken by the District Attorney. In Ex Parte Taylor, the Court of Criminal Appeals rejected a very similar argument:

> The district attorney argues finally that he and the State Prosecuting Attorney should be allowed to file separate petitions because they have different interests: he wants to win only one case, while the State Prosecuting Attorney has to look out for all the cases of all the prosecutors of the state. We emphatically disagree. The State of Texas has only one, indivisible interest in a criminal prosecution: to see that justice is done.

36 S.W.3d at 887 (footnote omitted). In other words, even though the Attorney General and the District Attorney might choose to vindicate the State's interest in different ways, the fact remains that the Attorney General and the District Attorney share an identical interest in this case: to see that justice is done.

16

See TEX. CODE CRIM. PROC. ANN. art. 2.01 (Vernon Supp. 2004) ("[T]he primary duty of all prosecuting attorneys [is] not to convict, but to see that justice is done."). In confessing error and waiving Saldano's procedural default, the Attorney General has taken the position that justice in this case requires that Saldano be resentenced. This choice is not unreasonable under the circumstances. Simply because the District Attorney would have made a different decision does not mean that the Attorney General is inadequately representing the State's interest--and hence, the District Attorney's claimed interest--especially since state law specifically gives the Attorney General the discretion to make these kinds of decisions.[12]

Because we conclude that the District Attorney does not have a "direct, substantial, and legally protectable interest" in these proceedings, and that any interest he does have is adequately represented by the Attorney General, we hold that the district court properly denied his application for intervention under Rule 24(a)(2). See Espy, 18 F.3d at 1205 ("If a party

---

[12] The District Attorney also suggests that Attorney General is inadequately representing the State's interest by failing to defend the Court of Criminal Appeals's decision in Saldano v. State, 70 S.W.3d at 876-78. The Court of Criminal Appeals, however, does not alone express the will of the State; before our court, the Attorney General is the proper official to speak for the State. As we stated in McGee, "[d]eference is due the states, as governmental units, not their courts, their executives, or their legislatures, save as these bodies represent the state itself." 722 F.2d at 1212.

17

seeking to intervene fails to meet any one of [Rule 24(a)(2)'s] requirements, it cannot intervene as a matter of right.").

### III. GRANT OF HABEAS RELIEF

In light of our ruling on intervention, we do not have jurisdiction to address the remaining issues raised by the District Attorney in his appellate brief. See Marino v. Ortiz, 484 U.S. 301, 304 (1988) ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled."); Edwards, 78 F.3d at 993 ("[B]ecause [the applicants] were denied leave to intervene, and thus never obtained the status of party litigants in this suit, we dismiss their appeals, insofar as they seek review of the district court's final judgment [on the merits].").

### IV. CONCLUSION

Accordingly, we AFFIRM the district court's order denying the District Attorney's application to intervene in this case and DISMISS the District Attorney's appeal of the district court's order granting habeas relief.